[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 19, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11766
Non-Argument Calendar

_____

D. C. Docket No. 06-80138-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FERNANDO ALVAREZ,
a.k.a. Little Fer,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 19, 2008)**

Before BARKETT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Fernando Alvarez appeals his 120-month sentence, imposed after he pled

guilty to conspiracy to possess with intent to distribute ecstasy, in violation of 21

U.S.C. §§ 846 and 841(a)(1), (b)(1)(C).   After review, we affirm.

During the course of a police investigation focused primarily on Joel

McDermott, a multi-substance trafficker, agents intercepted more than a hundred

calls between McDermott and Alvarez.  In these calls, Alvarez discussed quantities

of narcotics being picked up and delivered and monies owed to McDermott.

Agents learned that, beginning in early 2003, McDermott supplied ecstasy pills to

Alvarez for Alvarez to sell.  At sentencing, the parties agreed that Alvarez was

responsible for 26,000 ecstasy pills during the conspiracy.

## A.    Mitigating-Role Adjustment

On appeal Alvarez argues that the district court clearly erred in denying him

a mitigating-role adjustment pursuant to U.S.S.G. § 3B1.2(b).[1]

A mitigating-role adjustment applies to defendants who are "substantially

less culpable than the average participant."  U.S.S.G. § 3B1.2 cmt. n.3.  If the

defendant was a minor participant in the criminal activity, the district court

decreases the offense level by two levels.  U.S.S.G. § 3B1.2(b).  A minor

participant is one "who is less culpable than most other participants, but whose role

---

[1]We review for clear error the district court's determination of whether a defendant qualifies for a mitigating-role reduction.  United States v. Boyd, 291 F.3d 1274, 1277 (11th Cir. 2002).

could not be described as minimal." Id. § 3B1.2 cmt. n.5. If the defendant was a minimal participant in the criminal activity, the district court decreases the offense level by four levels. Id. § 3B1.2(a). A minimal participant is one who "plays a minimal role in concerted activity" and is "plainly among the least culpable of those involved in the conduct of a group." Id. § 3B1.2 cmt. n.4. The defendant has the burden to establish his role in the offense by a preponderance of the evidence. United States v. De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc).

In determining whether a mitigating-role reduction applies, the district court considers two principles: (1) the defendant's role in the offense compared to the relevant conduct attributed to him in calculating his base offense level; and (2) the defendant's role compared to that of other participants in the offense. Id. at 940-45. "[I]n the drug courier context . . . the amount of drugs imported is a material consideration in assessing a defendant's role in [his] relevant conduct . . . . [and] may be dispositive – in and of itself – in the extreme case." Id. at 943. Additionally, "when a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." Id. at 942-43.

Here, Alvarez's base offense level of 34 was determined, pursuant to U.S.S.G. § 2D1.1(c)(3), based on the 26,000 ecstasy pills he agrees he obtained

3

from McDermott to sell.[2]  Thus, Alvarez was held accountable only for the amount of drugs with which he was personally involved, not for the larger drug conspiracy operated by McDermott.  Also, we note, as did the district court, that the amount of ecstasy pills involved was substantial.  Because Alvarez's relevant conduct was limited to his own activity, the district court did not clearly err in concluding that Alvarez played an important role in the plan to distribute those ecstasy pills.

Furthermore, we cannot say that Alvarez was substantially less culpable than the other identifiable participants in the conspiracy to distribute the ecstasy pills.  At sentencing, Alvarez asserted that he worked for McDermott as a middleman, obtaining pills from McDermott and taking them to a third person, who would sell them and give the money to Alvarez to take back to McDermott.  The fact that Alvarez may be less culpable than McDermott is not determinative, given that it is possible for a conspiracy to have no minor or minimal participants.  See id. at 944.  Based on the content of Alvarez's numerous telephone conversations with McDermott, the district court found that Alvarez's involvement was extensive and that Alvarez was an active participant in the ecstasy conspiracy.  The district court

_____

[2]Alvarez now claims that his actual and relevant conduct were not the same because he did not actually sell the entire 26,000 pills of ecstasy, but returned some of them to co-conspirator McDermott.  Alvarez pled guilty to conspiracy to possess with intent to distribute ecstasy, not distribution of ecstasy.  Thus, Alvarez need not have actually sold all 26,000 pills for those pills to be counted as part of his actual conduct.  Alvarez does not dispute that he obtained those pills from McDermott to sell, even if in the end he did not sell all of them.

also found that Alvarez had some discretion in setting the price for the ecstasy pills.

Alvarez's emphasis on his limited involvement in McDermott's larger drug conspiracy, which involved cocaine as well as ecstasy, is unavailing because Alvarez was held accountable only for the ecstasy pills he personally handled. See id. (explaining that the district court should compare the defendant's role only to the other identifiable participants in the relevant conduct and that "[t]he conduct of participants in any larger criminal conspiracy is irrelevant"). Accordingly, the district court did not clearly err in denying Alvarez's request for a mitigating-role reduction.

## B.    Criminal History Score

Alvarez also argues that the district court miscalculated his criminal history score by assigning two points for his 2001 aggravated battery conviction.[3]

Under U.S.S.G. § 4A1.1(b), two points are added for each prior sentence of imprisonment of at least 60 days not counted in § 4A1.1(a). Further, where a prior sentence of imprisonment resulted from a revocation of probation, U.S.S.G. § 4A1.2(k) applies. U.S.S.G. § 4A1.1 cmt. n.2. Section 4A1.2(k)(1) states, "[i]n

---

[3]We review a district court's factual findings for clear error and its application of the sentencing guidelines to those facts de novo. United States v. Kinard, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006).

the case of a prior revocation of probation. . . add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable."

In 2001, Alvarez pled guilty in Florida state court to aggravated battery. He was sentenced to ten years' probation, but no jail time. However, in 2004, Alvarez violated the terms of his probation. As a result, the state court modified his probation sentence and imposed a 159-day imprisonment sentence, time served. Alvarez argues that his 159-day sentence, imposed after he violated his probation, was a "modification" of his probation rather than a revocation, and thus his 159-day sentence should not be counted in determining the criminal history points for his aggravated battery offense.

Alvarez's argument is foreclosed by United States v. Glover, 154 F.3d 1291, 1294 (11th Cir. 1998). In Glover, the defendant, like Alvarez, violated the terms of his probation, which resulted in a modification of his probation that included a 90-day term of imprisonment. Glover, 154 F.3d at 1293. Glover argued that his sentence resulting from a modification of probation, rather than a revocation, could not be counted under § 4A1.1(k)(1). Id. at 1293-94. This Court concluded that "§ 4A1.2(k)(1) contemplates that, in calculating a defendant's total sentence of

imprisonment for a particular offense, the district court will aggregate <u>any</u> term of imprisonment imposed because of a probation violation with the defendant's original sentence of imprisonment, if any, for that offense." <u>Id.</u> at 1294 (emphasis added). Furthermore, this Court explained that "'the finding of a probation violation coupled with a time-served imprisonment sentence and a resentencing to probation constitutes a "revocation of probation" under section 4A1.2(k)(1).'" <u>Id.</u> at 1294 (quoting with approval <u>United States v. Reed</u>, 94 F.3d 341, 345 (7th Cir. 1996)).

Under <u>Glover</u>, the district court properly considered Alvarez's 159-day sentence (imposed after he violated his probation) as a sentence of imprisonment of at least sixty days under § 4A1.1(b). Thus, the district court properly added two criminal history points pursuant to U.S.S.G. §§ 4A1.1(b) and 4A1.2(k) for his 2001 aggravated battery conviction.

**AFFIRMED.**